UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DANIEL TRAVIS,

    Plaintiff,

v.

MIDWEST OPERATING ENGINEERS
PENSION PLAN,

    Defendant.

No. 13 CV 12
Judge James B. Zagel

**MEMORANDUM OPINION AND ORDER**

Plaintiff Daniel Travis has brought this action against Defendant Midwest Operating Engineers Pension Plan, under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) seeking benefits due pursuant to the terms of an employee benefit plan. Plaintiff and Defendant have filed cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, Defendant's motion for summary judgment is denied and Plaintiff's motion for summary judgment is granted.

## I. STATEMENT OF FACTS

Plaintiff, born in 1961, is a former employee subject to a collective bargaining agreement with Local 150 Midwest Operating Engineers, making him a participant in Defendant Midwest Operating Engineers Pension Plan ("the Plan"). The Plan, an employee pension benefit plan within the meaning of 29 U.S.C. § 1002(2), provides for a total disability benefit called "All Work Total Disability." The Plan describes this as:

> . . . [In] order to apply for an All Work Total Disability Pension, a Participant must have been awarded a Social Security Disability Award. Once an application has been made, an All Work Total Disability is defined as a physical or mental condition of a Participant, which the Trustees find, on the basis of medical evidence, to totally and permanently prevent such Participant from working in any occupation.

In late 2010, Plaintiff began treatment for congestive heart failure. After a series of medical tests and treatments, he stopped working as an Operating Engineer in April 2011 and had a cardiac resynchronization therapy defibrillator surgically implanted. Pursuant to the terms of the Plan, he applied for Operating Engineer Total Disability benefits, a benefit similar to the All Work Total Disability except that it requires only that the applicant be disabled from performing the duties of Operating Engineer. In support of that application, he provided his medical record and the evaluation of his treating physician, Dr. Prentice. The Plan granted the Operating Engineer Total Disability benefit application in July 2011.

Shortly thereafter, the Social Security Administration granted Plaintiff's application for Social Security Disability Insurance. With this approval, Plaintiff applied for All Work Total Disability benefits on August 9, 2011. Within two days, the Board of Trustees, the administrative body responsible for determining benefit applications, denied the All Work Total Disability claim, stating that sedentary work was possible at that time based on the evaluation of their own medical consultant, Dr. Simon, who reviewed Plaintiff's medical file. Dr. Simon stated,

> The patient is to be considered totally and permanently disabled from all work as an operating engineer, both regular duty and light duty. The patient's cardiac function is poor, and he currently has an implantable cardiac device to monitor his cardiac rhythm, altering it as needed to keep the patient healthy and alive. Working even as a light duty operating engineer would put him at significant health risks. However, at this time, I do feel that sedentary work is possible at this time. Such work would not cause untoward effects on the heart, or put him, or others, at any health or safety risk. There are no objective findings to support any musculoskeletal condition that would preclude sedentary work. He should not do any lifting of greater than 10 lbs at such work, however.

In January 2012, Plaintiff appealed his denial of All Work Disability benefits, submitting a personal letter further explaining his condition. The Review Panel hired a second medical

consultant, Dr. Kaufman, to evaluate Plaintiff's file. Dr. Kaufman's opinion largely aligned with the opinion of Dr. Simon, and the Review Panel subsequently affirmed the denial of benefits.

In May 2012, Plaintiff again appealed his denial, this time submitting further documentation, including an updated evaluation by Dr. Prentice, who stated, "The question was asked is Mr. Travis totally disabled from any work or employment and the answer to that question is yes." Moreover, Dr. Prentice indicated on an attached medical form that Plaintiff "frequently" (34% to 66% of an eight-hour workday) experienced symptoms that interfered with the attention and concentration needed to perform even simple work tasks. Assuming a competitive work situation: (1) Plaintiff can walk ½ to ¼ city blocks without rest or severe pain; (2) Plaintiff can continuously sit and stand 20 minutes, after which he must lie down; (3) In a total eight-hour day, Plaintiff can sit and stand/walk for less than two hours; (4) Plaintiff will need to take eight unscheduled breaks per day, breaks which last for 30 minutes; (5) Due to edema, Plaintiff's legs must be elevated for 20% of an eight-hour work day; and (6) Plaintiff is expected to be absent from work more than four days per month. Plaintiff also provided the review panel with results from additional tests as well as a letter from his daughter, who served as his primary caretaker and described the difficulties of daily life due to his condition.

The Review Panel solicited the opinion of a third medical consultant, Dr. Sonne, who stated,

> Most of the medical file provided for review is from 12/2010 and 04/2011. There are no cardiology office notes from 2012. He is ambulatory on room air. He does not use any assist device. He is able to attend provider office visits and give a detailed medical history. His weight is unchanged. He is overweight at 6'1" tall and weight of 290 pounds. His ability to communicate is normal. His daughter noted that he can lift 10 pounds. There is no objective documentation of any restriction, limitation or impairment that would preclude full time US Department of Labor sedentary work; thus, he is not totally and permanently disabled from any occupation.

Based on this opinion, but without addressing any of the additional evidence Plaintiff provided, the Review Panel again affirmed the denial of All Work Disability benefits. Plaintiff then brought this suit requesting the court to find that the Review Panel's denial of benefits was improper and order an award of All Work Disability benefits.

## II. DISCUSSION

### A. Standard of Review for Summary Judgment

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001). The Court's "function is not to weigh the evidence but merely to determine if there is a genuine issue for trial." *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildfire Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the

4

nonmoving party, and draw all reasonable inferences in the nonmoving party's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

The proper standard of review for a denial of benefits challenged under ERISA is *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When the plan, such as this one, gives an administrator such discretionary authority, the arbitrary and capricious standard of review applies. *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 773 (7th Cir. 2003). While the arbitrary and capricious standard is a deferential standard, it "is not a rubber stamp and deference need not be abject." *Id.* at 774. I will not uphold a denial of benefits "when there is an absence of reasoning in the record to support it." *Id.* at 774-75

### B. Full and Fair Review

ERISA requires that when a plan denies a claim or appeal, it must set forth in writing the "specific reasons for such denial, written in a manner calculated to be understood by the participant" and "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review." 29 U.S.C. § 1133. Its implementing regulations go further by requiring the plan to provide "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." 29 C.F.R. § 2560.503-1(g)(1)(iii). "These requirements are designed both to allow the claimant to address the determinative issues on appeal and to ensure meaningful review of the denial." *Love v. Natl. City Corp. Welfare Benefits Plan*, 574 F.3d 392, 396 (7th Cir. 2009). "[T]he administrator must weigh the evidence for and against, and within reasonable limits, the reasons for rejecting evidence must be articulated if there is to be

meaningful appellate review." *Halpin v. W.W. Grainger, Inc.*, 962 F.3d 685, 695 (7th Cir. 1992). Several aspects of the Plan's actions in this case fell short of these requirements, and thus, its denial of benefits was arbitrary and capricious.

First, the Plan failed to explain why it chose to disregard or discredit some key findings of Plaintiff's treating physician, Dr. Prentice. It is true that a plan administrator need not "accord special weight to the opinions of a claimant's physician" vis-à-vis its own medical consultants. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). However, the administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.*; *see Love*, 574 F.3d at 396-98 (holding disability benefit plan's denial to be arbitrary and capricious because it did not explain "*why* the reviewer chose to discredit the evaluations and conclusions of [the plaintiff's] treating physicians").

In this case, Dr. Prentice stated that Plaintiff was "totally disabled from any work or employment." In support of that conclusion, he completed a medical form that stated that Plaintiff would experience frequent (defined as 34% to 66% of an eight-hour workday) symptoms that interfere with the attention and concentration needed to perform even simple tasks during a typical workday. Dr. Prentice went on to state that Plaintiff can sit and stand for 20 minutes at a time, after which he must lie down. In a total eight-hour work day, Plaintiff can sit and stand/walk for less than two hours. Plaintiff would have to take eight unscheduled breaks per day, with breaks lasting for 30 minutes. Due to edema, Plaintiff's legs would have to be elevated for 20% of an eight-hour work day. Finally, Plaintiff would be expected to be absent from work for more than four days per month. Pl. Stmt. of Material Facts ¶¶ 48-53.

I take no position as to the veracity of such findings, and I would certainly expect a plan to solicit the opinions of its own medical consultants, as it did in this case. Moreover, it is within

the Plan's discretion to favor one medical expert over another, and since "courts are ill equipped to conduct" these types of medical inquiries, I give significant deference to the Plan. *Black & Decker*, 538 U.S. at 832. Unfortunately, the Plan failed to provide any reason *why* it chose to discredit or disregard the opinions of the physician who actually observed and treated Plaintiff. *See Love*, 574 F.3d at 396. At best, the Plan notes in its final decision affirming the denial of benefits that the "[medical] consultant reviewed [Plaintiff's] records submitted in support of the re-hearing. The consultant concluded that there is no objective documentation of any restriction, limitation or impairment that would preclude full time sedentary work and that the participant is not totally and permanently disabled from any occupation." Yet, a review of the medical consultant's evaluation, much less the Review Board's opinion, shows not a single word about Dr. Prentice's evaluation. Without such an explanation, it makes it difficult for Plaintiff to know what "additional material or information [is] necessary for the claimant to perfect the claim," 29 C.F.R. § 2560.503-1(g)(1)(iii), and it hinders meaningful appellate review, *see Halpin*, 962 F.3d at 695. It is important to note, however, that Dr. Prentice's favorable evaluation does not *require* a finding that Plaintiff is totally disabled from any occupation, but rather, "that ERISA requires the Plan to provide a more thorough explanation for its determination than it has here." *Love*, 574 F.3d at 398.

Plaintiff also argues that the Plan's denial of benefits was arbitrary and capricious because it did not consider the Social Security Administration's grant of Social Security Disability Insurance (SSDI). "When the Social Security Act's disability standard is different from that in the ERISA plan, a Social Security determination is just one more factor for consideration in an ERISA benefits determination." *Black v. Long Term Disability Ins.*, 582 F.3d 738, 748 (7th Cir. 2009); *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 2007 WL 2609431, 42

7

Employee Benefits Cas. 1599 (C.A.7 (Ill.), 2007); *Tegtmeier v. Midwest Operating Engineers Pension Trust Fund*, 390 F.3d 1040, 1046 (7th Cir. 2004). Further, "the SSA's determination of disability is not binding on employers under ERISA." *Love*, 574 F.3d 392, 398 (7th Cir. 2009).

Defendant points out that the definition of All Work Disability differs from the SSA's guidelines for a grant of SSDI benefits in that an applicant for SSDI only needs to have been found to be disabled for at least "5 full calendar months." Def. Stmt. of Facts ¶ 18. Yet, the All Work Disability definition itself requires a grant of SSDI benefits as a precondition for consideration of All Work Disability benefits. The SSA determination is certainly not so irrelevant to merit hardly a word about it in its denial of benefits. While the Plan is not bound by an SSA determination nor must it defer in any way, it is arbitrary and capricious not to offer at least an explanation as to why it considers such evidence irrelevant to its inquiry.

### C. Vocational Considerations

Plaintiff also argues that the Plan's denial was arbitrary and capricious because it did not take vocational considerations into account. Specifically, Plaintiff argues that the plan administrator cannot construe the plan language so strictly that disability is denied if the claimant is able to engage in *any* activity, regardless of Plaintiff's vocational qualifications. In contrast, Defendant simply takes the position that because the Plan does not expressly state that vocational considerations must be taken into account in determining whether Plaintiff is totally disabled, the plan administrator does not need to engage in any kind of vocational analysis whatsoever.

Where a benefit plan expressly defines disability in terms of the vocational qualifications of the applicant, the plan is required to perform a vocational analysis. *See Hammond v. Fidelity and Guar. Life Ins. Co.*, 965 F.2d 428, 428-29 (7th Cir. 1992) (requiring the consideration of the applicant's vocational qualifications where "totally disabled" is defined by the plan as "to

8

perform the chief duties of his job or any job which he may be fitted by his (1) training; (2) education; or (3) experience"); *Tate v. Long Term Disability Plan for Salaried Employees of Champion Intern. Corp. No. 506*, 545 F.3d 555, 560 (7th Cir. 2008) (requiring review of vocational evidence in making disability determinations where qualification for grant of benefits requires the applicant to be "incapable of performing any occupation or employment for which [she was] qualified by education, training, or experience"). The Seventh Circuit has not, however, directly addressed "whether ERISA plan administrators as a rule must hire vocational experts or perform a transferrable skills analysis" where there is no such clause in the total disability benefit provision referring to vocational qualifications. *Tate*, 545 F.3d at 561.

While the Seventh Circuit has not squarely addressed this issue, seven circuits *have* expressed an opinion, and they are unanimous to varying degrees that, even in the absence of specific plan language, benefit administrators cannot outright ignore vocational considerations. *See Demerovic v. Building Service 32 B-J Pension Fund*, 467 F.3d 208 (2d Cir. 2006); *Helms v. Monsanto Co., Inc.*, 728 F.2d 1416, 1420 (11th Cir. 1984); *Torix v. Ball Corp.*, 862 F.2d 1428, 1431 (10th Cir. 1988); *VanderKlok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 614-15 (6th Cir. 1992); *Saffle v. Sierra Pac. Power Co.*, 85 F.3d 455, 458 (9th Cir. 1996); *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir. 1998); *Torres v. Unum Life Ins. Co. of Am.*, 728 F.2d 1416, 1420 (8th Cir. 2005). In *Demerovic*, a 55 year-old night cleaner who had worked as a member of the local union for approximately 30 years, applied for "total and permanent disability" benefits after she had a total knee replacement stemming from osteo-arthritis. 467 F.3d at 209-10. She submitted a form completed by her attending physician and a Notice of Award from the Social Security Administration granting her Social Security disability payments. *Id.* at 210. The administrator referred the matter to an outside medical consultant who opined

9

that "she was able to sit for '[a]bout 8 hours' in a day, though she was able to stand or walk for '[l]ess than 2 hours,' and was able to walk no more than one city block 'without rest or severe pain.'" *Id.* Contrary to the opinion of the plaintiff's attending physician, the medical consultant felt that 'she [was] presently able to work in a sedentary capacity.'" *Id.* Based on this evaluation, the administrator denied the total and permanent disability benefits. Subsequent appeals supplemented by additional physicians' opinions were denied for largely the same reasons. *Id.*

The administrator and the appeal board in *Demerovic* argued—just as Defendant argues in this case—that a vocational analysis was not necessary based on the plain language of the disability plan.[1] The Second Circuit rejected this argument, holding that it was arbitrary and capricious for the administrator to interpret the plan language "so strictly as to deny benefits to any claimant who is physically capable, in the abstract, of any kind of work whatsoever, regardless of the claimant's individual vocational circumstances." *Id.* at 213. The Court reasoned that to hold otherwise would mean that "the affected individual must be utterly helpless to be considered disabled." *Id.* at 214, quoting *Helms*, 728 F.2d at 1420.

A few district courts have taken the opposite view, holding that ERISA does not impose a blanket requirement on plan administrators to obtain independent vocational expert analysis. Rather, "diversity among plans is entirely permissible." *Creelman v. Carpenters Pension & Annuity Fund of Philadelphia & Vicinity*, 945 F. Supp. 2d 592 (E.D. Pa. 2013); see also *Edelman v. Roofers' Pension Fund*, No. 12 C 8221, 2014 WL 1660625 (N.D. Ill. Apr. 24, 2014); *but see Schoonover v. Cent. Laborers' Pension Fund*, 07-CV-2189, 2008 WL 1902043 (C.D. Ill. Apr. 28, 2008). However, this minority view goes against some of the most important purposes of

---

[1] "Total and permanent disability" in the *Demerovic* plan is defined as "the inability to work in any capacity, as determined in the discretion of the Trustees or persons they designate. You will not satisfy this definition of total and permanent disability just because you are unable to continue working at your usual occupation; you must be unable to perform any gainful employment to be considered totally and permanently disabled under this Plan." 467 F.3d at 209-10.

ERISA. Congress intended ERISA to help ensure "that those who participate in the plans actually receive the benefits they are entitled to and do not lose these as a result of unduly restrictive provisions." *Demirovic*, 467 F.3d at 214 (internal quotes omitted), quoting 1974 U.S.C.C.A.N. 4670, 4676-77. This would "assure American workers that they may look forward with anticipation to a retirement with financial security and dignity, and without fear that this period of life will be lacking in the necessities to sustain them as human beings within our society." *Id.* at 215 (internal quotes omitted), quoting 1974 U.S.C.C.A.N. 4838, 4849. Consequently, I adopt the majority view that a denial of total disability benefits that fails to consider vocational qualifications is arbitrary and capricious.

In this case, the Board of Trustees and the Review Panels all issued decisions denying All Work Disability benefits because they believed that sedentary work was possible. This view was based on the assessments of three medical consultants, all three of whom opined that Plaintiff could perform sedentary work. Nowhere is there "a non-medical assessment as to whether [he] has the vocational capacity to perform any type of work—of a type that actually exists in the national economy—that permits [him] to earn a reasonably substantial income from [his] employment, rising to the dignity of an income or livelihood." *Demirovic*, 467 F.3d at 215. The record shows the Plan did not consider Plaintiff's education level, training, and skills. The record further shows that the Plan provided no description of what kind of job would allow him to work in a sedentary capacity while still accommodating his physical limitations, such as lying down every 20 minutes, taking eight unscheduled half-hour breaks per day, and being absent from work more than four days per month. As such, without a reasonable vocational analysis, the determination that Plaintiff was able to work and not totally disabled was arbitrary and capricious.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied and Plaintiff's motion for summary judgment is granted. The matter is remanded to the administrator for further consideration of Plaintiff's appeal in a manner consistent with this opinion.

ENTER:

James B. Zagel
United States District Judge

DATE: August 15, 2014